(59 Misc. Rep. 248.)

COX v. STILLMAN.

(Supreme Court, Special Term, Cayuga County. May, 1908.)

1. ASSIGNMENTS—CONTRACT—CONSTRUCTION—CONTINUANCE—FULFILLMENT.

Plaintiff, an attorney, having a claim for legal services against an estate, assigned it to defendant on the agreement that when defendant had collected the claim he would reimburse himself for advances made to plaintiff and pay over any balance. The complaint alleged that defendant and the representatives of the estate were interested in an award for lands condemned by the United States, and that defendant, acting for himself and as attorney for the representatives of the estate, had collected the award, and had successfully resisted adverse claims to the fund, and had in his hands a large sum of money arising from said award. *Held*, that defendant's receipt of such money did not constitute a collection of the assigned claim, and that the complaint was fatally defective, in the absence of an allegation that defendant had in fact collected the claim.

2. FRAUD—DECEIT—REPRESENTATIONS—RELIANCE.

Where, in an action to recover the proceeds of a claim assigned to defendant under an agreement that defendant should collect the claim and account therefor to plaintiff after satisfying certain advances, defendant pleaded a subsequent absolute assignment of the claim, a reply by which plaintiff alleged that such assignment was obtained by fraud, but failing to allege that defendant intended any fraud, or that plaintiff was induced by any fraud to execute the assignment, was fatally defective.

Action by James R. Cox against James Stillman. On demurrer to reply. Sustained.

Greenfield & Aiken (E. Clarence Aiken, of counsel), for plaintiff.

Shearman & Sterling (Fred. E. Storke, of counsel), for defendant.

HENDRICK, J. Chronologically stated, the following are the allegations of the complaint: In 1853 the premises now occupied by Ft. Brown, in Texas, were owned by Maria Josefa Cavazos, who was then a resident of Mexico. In that year the property was condemned by the United States government and its value fixed at $50,000. In 1879 said Maria Josefa Cavazos died, having conveyed to Charles Stillman "the one undivided half of said Ft. Brown site, with the avails thereof then due to her, in consideration of services to be performed by him in maintaining her title." In 1876 Charles Stillman died, and defendant James Stillman, his son, was appointed his executor. He bought out the interest of his four co-legatees under the will and "undertook to carry out and perform his father's obligation and duties in respect of Ft. Brown." In 1879 Maria Josefa Cavazos died, and her son Pedro Cavazos was appointed executor. In 1882 the executor was displaced, and Thomas Carson was appointed administrator with the will annexed. In 1885 Congress made an appropriation of $160,000 to pay for the Ft. Brown site. Several adverse parties then filed claims to the award, and plaintiff rendered services to the estate as an attorney and counselor at law. These services began long prior to the appropriation, about 1873, and extended to some time after Thomas Carson was appointed administrator cum testamento annexo in 1882. In 1891 plaintiff presented his bill for $6,923.30, which was approved by Carson as administrator.

cum testamento annexo. Between 1891 and 1896 defendant lent plaintiff sums of money aggregating $1,650. In March, 1893, plaintiff assigned to defendant all his right, title, and interest in the claim against the estate, and authorized him to collect it; defendant agreeing to collect and pay over the excess to plaintiff, who "stipulated that said assignment should be a security" for advances past and future. In 1895 plaintiff recovered judgment "in the Supreme Court" for $9,109.14. About the same time defendant received the $160,000. Then one Combe and others sued defendant and said Carson as administrator cum testamento annexo, claiming a part of said appropriation, and, pursuant to order, defendant deposited in bank $50,000 to the credit of said actions. In March, 1896, defendant advanced to plaintiff $2,500, and later an additional sum of $1,000, and plaintiff executed and delivered to him an additional assignment of his claim and judgment against the estate, "so vesting in defendant the entire interest all under the contract of March 22, 1893." In April, 1905, the Combe and other actions were determined in favor of defendant and the estate and the $50,000 returned to defendant. "No accounting could be had by said defendant of the funds in his hands so received from the government until the conclusion of said suits" by Combe and others. Defendant now holds said sum of $160,000. Said Carson is dead, and Emilio C. Forto has been appointed administrator cum testamento annexo. Defendant received an assignment from Carson as administrator cum testamento annexo, or power of attorney, to collect said appropriation. A demand for an accounting has been refused by defendant. Plaintiff asks judgment for an accounting, payment to him of the sum due, less advances, and an adjustment of interest.

It appears from this synopsis of the complaint that plaintiff makes no claim against the estate of Maria Josefa Cavazos, nor against the estate of Charles Stillman. His claim is solely against James Stillman, and would be fully satisfied by payment to him of the judgment of $9,109.14, with interest from about 1895, less the sums of $1,650, $2,500, and $1,000, with interest from about 1896. The dates from which interest can be computed are not definitely alleged, except, perhaps, the $2,500 which was advanced "on or about March 12, 1896." If nothing further appeared in the complaint it would present a good cause of action at common law to be tried by a jury. The amount due is easy of computation; and, even if the process should be called an accounting, it could be taken in a court of law as well as in a court of equity. The basis of the defendant's obligation to pay the sum due on the judgment for $9,109.14, over and above the advances, is found in the following allegation:

"On or about March 22, 1895, said plaintiff assigned to said defendant, who for many years had been his intimate friend, all his right, title, and interest in and to the said claim which he had against the said Cavazos estate, which then amounted, with interest, to over $10,000, and authorized said defendant to collect the same, and stipulated that said assignment should be a security for moneys which said defendant had advanced to the plaintiff, and for any future indebtedness or advancement which defendant might make to said plaintiff; said defendant agreeing to collect said claim, and to account and pay over to the plaintiff all that he might collect on the said claim of the

plaintiff against the Cavazos estate, after satisfying such loans and indebtedness and interest."

In construing this promise we must lay out of view the $80,000 assigned by Maria Josefa Cavazos to Charles Stillman and now owned by defendant as his successor. The other $80,000 is owned by the Cavazos estate, although held by defendant under an assignment or power of attorney. It is from this fund that defendant agreed to seek satisfaction of plaintiff's claim, or from the general assets of the estate. In order to recover it devolves upon plaintiff to allege that defendant has performed that agreement and has collected the claim. I fail to find any such allegation. On the contrary, the complaint alleges that, subsequent to 1893, when the agreement was made, plaintiff himself proceeded, in 1895, to collect the claim and in his own name recovered judgment. Defendant has taken no proceedings to enforce that judgment. If it be claimed that, because defendant has the $80,000 belonging to the estate in his custody and is liable to plaintiff on account of his neglect to pay out a part of it in satisfaction of plaintiff's judgment, the answer is that no such summary method of enforcing claims against decedents' estates is known to our law. Such a payment could be justified only by an order or decree of court made in some proceeding to which the administrator cum testamento annexo is a party. Furthermore, if the complaint had alleged that defendant had collected the judgment and now holds a balance in his hands, what shall be done with the following allegation?

"On or about March 12, 1896, said defendant so holding the entire fund, plaintiff executed and delivered to the defendant under said above-mentioned agreement, at his request and demand, another and further assignment of said claim and judgment against the said Cavazos estate to the defendant, so vesting in defendant the entire interest, all under the contract of March 22, 1893, above set forth."

What effect has the statement that this second assignment was made under the agreement of 1893? Does it nullify the allegation that the "entire interest" thus became vested in defendant? Is it a conclusion of law? If not, what fact does it allege directly or by implication? The only fact apparently relevant in the previous agreement is that the assignment was executed as security. The second one cannot have been made under that agreement, else how could it vest the "entire interest?" Without invoking the rule that pleadings are construed against the pleader, I am constrained to hold that the complaint does not allege a cause of action against the defendant.

The answer, as amended, admits the execution of the assignment of 1893 as security, and that defendant lent plaintiff $1,650 and $1,000. It denies specially that defendant agreed to collect plaintiff's claim or to account for any balance, or that the second assignment was executed under the agreement of 1893, or that defendant has collected any part of said claim. The answer alleges that the first assignment was executed by plaintiff only, and that the second was an absolute transfer of the claim to defendant. A second defense alleges that the assignment of 1896 was made for valuable considerations and transferred absolute title to the judgment against the estate. A third de-

fense alleges that plaintiff has an adequate remedy at law. A fourth defense alleges the six-year statute of limitations. A fifth defense alleges the ten-year statute of limitations. The answer, by failure to deny, admits that defendant holds the $160,000 under an assignment or power of attorney. In the same manner it admits that defendant advanced $2,500 to plaintiff in 1896. The only material issues raised by the complaint and answer are whether defendant agreed to collect plaintiff's claim against the estate, and whether the second assignment vested in defendant absolute title to the judgment. If there had been a further issue as to whether defendant did collect the judgment the action would have been ready for a jury.

"By way of reply to the affirmative defense set up in the answer. herein," plaintiff alleges that the settlement of 1896 was procured by representations made by defendant and his agents that he had but little property of the Cavazos estate in his hands; that defendant knew said representations were untrue, for he had received $80,000 belonging to the estate; that plaintiff believed said representations and relied upon them; and that said settlement was unjust and extortionate, because defendant was plaintiff's trustee. As these are four affirmative defenses, the reply is a little ambiguous; but we assume that it is directed to the one which alleges that the second assignment was absolute. By failure to deny it admits the allegations that, by the terms of the agreement, marked "Exhibit A," plaintiff assigned absolutely to defendant the judgment against the estate for the consideration therein stated. The reply seeks to nullify the assignment by alleging that it was obtained by fraud. It is not alleged that defendant intended any fraud, nor that plaintiff was induced by any fraud to execute the assignment. Perhaps the allegation that the "representations were known to said defendant to be untrue" is sufficient as an allegation that they were untrue to defendant's knowledge. If we assume, also, that an allegation that plaintiff believed and relied upon false representations is equivalent to an allegation that he was induced by them to execute the assignment, which he would not have done had they not been made, we can hardly go further and hold that false representations innocently made will either support an action or serve as a defense. "The gravamen of the action is actual fraud and nothing else will sustain it." Kountze v. Kennedy, 147 N. Y. 129, 41 N. E. 414, 29 L. R. A. 360, 49 Am. St. Rep. 651.

But, assuming that the misrepresentations were properly pleaded, are they material? How would plaintiff's rights be affected by the fact that the government award was in the possession of the attorney for the administrator cum testamento annexo, instead of in the hands of the latter? Would not the procedure for collection of his judgment be virtually the same in one case as in the other? Or how could plaintiff be injured by representations that defendant "had little or nothing of money or property in his hands belonging to the estate?" If he had paid the $80,000 over to the administrator cum testamento annexo, was he liable to a creditor? Then, too, the Code permits a reply only where the answer contains new matter constituting a defense by way of avoidance. Code Civ. Proc. § 516. If this new mat-

ter, called a second defense, is expunged, substantially the same allegation will remain in the preceding defense. As the complaint alleges this same second assignment, it is very doubtful if its repetition in the answer is new matter at all. It follows from these considerations that the reply "is insufficient in law upon the face thereof," and the demurrer must be sustained, with the usual leave to withdraw and amend on payment of costs.

No motion has been made to strike out the reply. After it was served defendant demanded a bill of particulars, which demand was complied with, and the demurrer noticed for trial by defendant. I do not deem it necessary, therefore, to pass upon the right of a party to withdraw a pleading, as that question should be disposed of before a demurrer to that pleading comes up for trial. Nor has any motion been made for judgment on the pleadings, and the case must stand for the present on an interlocutory judgment to be entered sustaining the demurrer to the reply.

A proposed decision may be submitted, with notice of settlement.